IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JANE DOE,

Plaintiff,

v.                                          Civil Action No. 3:10CV533-JAG

VIRGINIA DEPARTMENT OF
STATE POLICE, et al.,

Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(6) filed by defendants J. Gilbert Seaux and the Spotsylvania County School Board (Dk.

No. 6) and the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by

defendants Colonel W. Steven Flaherty and the Virginia Department of State Police (Dk. No.

19).

Claiming various constitutional violations, the plaintiff asks the Court to rewrite

Virginia's sex offender registration law, to force the Commonwealth to take her off its

registration list, and to tell the Spotsylvania County School Board how it must deal with parents

who are registered sex offenders. The plaintiff's complaint is fraught with problems, and the

Court will grant the motions to dismiss.

## I. STATEMENT OF THE CASE

This case arises from the plaintiff's obligation to register as a sex offender, pursuant to

Va. Code § 9.1-902 (formerly Va. Code § 19.2-298.1). In 1993, the plaintiff was convicted of

1

carnal knowledge of a minor without the use of force in violation of Va. Code § 18.2-63. She was sentenced to two-years incarceration with all but thirty (30) days suspended. After her release, she was required to register on the Virginia Sex Offender and Crimes Against Minors Registry (the "Registry"), but, at that time, could petition the circuit court in the jurisdiction in which she then resided or was convicted to have her name removed from the Registry. *See* Va. Code § 9.1-910. On July 1, 2008, however, the Virginia General Assembly's recent amendment to Va. Code § 9.1-902 came into effect, reclassifying the plaintiff's 1993 conviction as a sexually violent offense due to the fact that she was five years older than the victim-minor. *See* Va. Code § 9.1-902(E)(1). As a result of this amendment, the plaintiff is now required to remain on the Registry for life, pursuant to Va. Code § 9.1-910(A).

A brief overview of the sex offender registration statute is important to this case. Virginia requires sex offenders to register with the Department of State Police. A photograph is taken of them, and certain personal information is recorded. The State Police maintain a website where they post the names and photographs of offenders by zip codes in which they work and live. The website is open to anyone browsing the Internet.

The publication of one's identity and location is not, however, the sole negative effect of being on the Registry. Under Va. Code § 18.2-370.5(A), a violent sex-offender is prohibited from "entering and being present, during school hours and during school-related and school-sponsored activities," on any property that is a public or private school or a child daycare center.

The statute contains a provision that can relax the prohibition against entering schools and daycare facilities. The offender may petition the circuit court, under Va. Code § 18.2-370.5(B), for permission to enter school or daycare grounds. The offender must notify the Commonwealth's Attorney, and either the school administrator or proprietor of the child daycare

center, of the petition.  If the court grants the petition, it may impose limitations or other terms on the permission to enter.

A second step is required after the petition to court.  The offender must also obtain separate permission from the school board, the owner of a private school or daycare, or their designees.  These entities can also impose terms and conditions on entry on their property.  Obviously, the Virginia General Assembly designed this statute to keep children safe from sex offenders, while recognizing the need of parents on the registry to enter schools and daycare centers.

Although the plaintiff lives in Spotsylvania and has three children of, or nearing, school age, she has not taken advantage of the procedures to relax the prohibition on entering school or daycare grounds.  The plaintiff has not filed the appropriate petition in Spotsylvania Circuit Court.  She has not even approached the Superintendent of Schools or the Spotsylvania School Board to seek permission to enter school grounds.

Rather than seek permission to enter the relevant property, the plaintiff has filed in this Court a four-count complaint under 42 U.S.C. § 1983 against the Spotsylvania County School Board (the "Board"), Board chairman J. Gilbert Seaux ("Seaux"), the Virginia Department of State Police (the "Department"), and Superintendent of the State Police, Colonel W. Steven Flaherty ("Flaherty").[1]  Essentially, the plaintiff complains that she has been forced to reveal publically her identity, reclassification, and relationship to her minor children, thus branding them as children of a violent sex offender. (Compl. ¶¶ 17-18.)  She also states that the failure of Seaux and the Board to enact a policy allowing an anonymous petition infringes certain fundamental rights afforded her under the Constitution of the United States.  The plaintiff

---

[1] Counts I, II, and III were filed against the Board and Seaux.  Counts I, II, III, and IV were filed against the Department and Flaherty.

charges the Department and Flaherty with the same constitutional violations due to their failure to provide her with any procedure, before or after her reclassification, to contest her identification as a sexually violent offender. (*Id.* ¶ 13.)

In the complaint, the plaintiff provides an extensive list of the prohibited activities and inconveniences her reclassification has caused. She can no longer attend parent-teacher conferences; attend or pick-up her children from school or after-school activities; take her son to Cub Scouts (because it meets once a week at a church with a school); pick-up or drop-off her children when they miss the bus, get sick, or have doctor appointments; enroll her children in daycare; or provide school-sponsored vaccinations to her children when offered on school property. (*Id.* ¶¶ 25-28, 30-31.) The plaintiff claims, therefore, that she has been denied the fundamental rights to direct the upbringing and education of her minor children and to associate with other parents, her children's teachers, and other school/daycare employees. (*Id.* ¶¶ 32-33.)

Further, the plaintiff claims that her reclassification has infringed her fundamental right to the free exercise of religion because the Episcopal Churches in the Spotsylvania area that she wishes to attend have a child daycare, Sunday school, or weekend Bible study program. (*Id.* ¶¶ 35-37.)

Counts I and II of the complaint, asserted against all defendants, allege violations of the plaintiff's substantive and procedural due process rights under the Fourteenth Amendment to direct the upbringing and education of her children. Count III, asserted against all defendants, alleges that the plaintiff's associational rights under the First and Fourteenth Amendments have been violated. Lastly, Count IV, applied to only the Department and Flaherty, alleges that her fundamental right to the free exercise of religion under the First and Fourteenth Amendments has been violated.

In her prayer for relief, the plaintiff asks the Court to declare Va. Code § 18.2-370.5, the 2008 amendment to Va. Code § 9.1-910, and the Board policy[2] unconstitutional; to order defendants Seaux and the Board to implement a procedure by which Plaintiff can anonymously petition the Board to enter and remain on school property; and to enjoin Seaux and the Board from exercising their authority to prevent the plaintiff from entering school property in Spotsylvania County. The plaintiff also seeks an injunction ordering defendants Flaherty and the Department to cease enforcement of Va. Code § 9.1-900, *et seq.*, enjoining Flaherty and the Department from classifying her as a violent sex offender, and stopping them from collecting, maintaining, and making publicly available her information in the Registry. Finally, she asks the Court to order Flaherty and the Department to provide her with a procedure to prove that she is not a dangerous person and, therefore, should not be classified as a sexually violent offender.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. If a defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint are presumed true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780-81 (E.D. Va. 2002). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191

---

[2] It is unclear whether the plaintiff claims a Board policy actually exists or whether she is complaining about the absence of a Board policy that fits her desire to enter and remain on school property anonymously.

(7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219. Consideration of evidence outside of the pleadings does not necessarily convert the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). In either case, the plaintiff bears the burden of proof to preserve jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S., 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Although the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### III. DISCUSSION

6

## A. Jurisdiction

### 1. Eleventh Amendment

Flaherty and the Department argue that the plaintiff's Complaint should be dismissed, under Fed. R. Civ. P. 12(b)(1), because her claims are barred by Eleventh Amendment immunity[3] for states and state agencies/officials sued by their own citizens. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 n.4 (4th Cir. 2005) ("[T]he essence of the [Eleventh Amendment] immunity is that the State cannot be sued in federal court at all, even where the claim has merit, and the importance of immunity as an attribute of the States' sovereignty is such that a court should address that issue promptly once the State asserts its immunity."). The state defendants also cite *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), for the proposition that "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. . . . As such, it is no different from a suit against the State itself." Thus, the defendants conclude that the plaintiff's allegations should be dismissed against both Colonel Flaherty, as a state official sued in his official capacity, and the Department.[4]

*Ex parte Young*, 209 U.S. 123 (1908), provides an exception to the Eleventh Amendment's proscription on suit. In *Ex parte Young*, the Supreme Court found:

> ample justification for the assertion that individuals who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

---

[3] Although protection under the Eleventh Amendment is frequently referred to as immunity, it is actually a limitation on federal court jurisdiction. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480-481 (4th Cir. 2005).

[4] Colonel Flaherty has *only* been sued in his official capacity. (*See* Compl. ¶ 7.)

*Young*, 209 U.S. at 155-56. The plaintiff seeks declaratory and injunctive relief under §§ 2201-2202 and 42 U.S.C. § 1983, not the sort of monetary relief prohibited by the Eleventh Amendment and sought in *Will*. In her words, the plaintiff requests that the Court prohibit the Department and Flaherty "from doing an act which [they] had no legal right to do," *i.e.* maintaining the Registry and prospectively enforcing an unconstitutional state law that prohibits her entry onto Spotsylvania County school property. *See Ex parte Young*, 209 U.S. at 158-59. As explained by the Fourth Circuit, although "sovereign immunity protects a state from being sued by one of its own citizens without its consent," the *Ex parte Young* doctrine "allows private citizens, in proper cases, to petition a federal court to enjoin state officials in their official capacities from engaging in future conduct that would violate the United States Constitution or a federal statute." *Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002).

Under the *Ex Parte Young* exception, therefore, the plaintiff may sue Flaherty in his official capacity for equitable relief in federal court. The Department, however, is a state agency, and suit against it is prohibited by the Eleventh Amendment. *See Constantine*, 411 F.3d at 479 ("The Supreme Court has held that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State,' and the Eleventh Amendment protects 'state agents and state instrumentalities' as well as the States themselves." (citations omitted)).

Flaherty argues that, while *Ex parte Young* does apply to the plaintiff's claims for prospective relief against a state official enforcing an unconstitutional act, the plaintiff is primarily seeking relief against a state official enforcing a *constitutional* act. In other words, Flaherty says that, because he will win the case, the Court does not have jurisdiction over him. This puts the cart before the horse. Determining the constitutionality of the defendants' actions

is improper at this stage of its analysis. Flaherty asks the Court to make a premature inference of constitutionality in ruling on a jurisdictional question. Instead, such a pretrial determination should be saved for a motion addressing the merits of the case. The plaintiff has made proper claims for prospective and injunctive relief that warrant this Court's jurisdiction over Flaherty under *Ex parte Young* and *Franks*.

### 2. Ripeness and Standing

Although the parties did not raise the issue, the Court has serious jurisdictional reservations about the ripeness of several claims in this case and about the plaintiff's standing to pursue those claims. Ripeness and standing are doctrines that arise from the case and controversy clause of Article III of the Constitution. U.S. Const., art. III, § 2, cl. 1; *see Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970). Both are designed to ensure that a true dispute exists between the parties and that the courts can redress the alleged wrong.

Ripeness deals with the timing of the suit—whether the dispute between the parties has ripened into a matter amenable to litigation. The possibility of a future injury does not satisfy the ripeness doctrine and, therefore, the requirements of Article III of the Constitution. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "Dismissal for lack of ripeness is appropriate where nothing in the record shows that appellants have suffered any injury thus far and the future effect of the law relied upon remains wholly speculative." *Gasner v. Bd. of Supervisors of Cnty. of Dinwiddie, Va.*, 103 F.3d 351, 361 (4th Cir. 1996). A case is not fit for judicial decision when it is "dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). As the Fourth Circuit has stated:

> In order for a claim to be ripe, a plaintiff must show that he has suffered an injury in fact, meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical.

*Lewis v. Aetna Life Ins. Co.*, 993 F. Supp. 382, 385 (E.D. Va. 1998) (internal citations and quotations omitted).

Standing, in contrast, asks whether the litigants are the proper people to litigate a question. The typical issue in standing is whether the plaintiff has suffered a concrete injury that gives him motivation and interest in prosecuting a case. Standing is also part of the Article III case or controversy requirement:

> To establish standing, Plaintiffs must show that: (1) they suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there [is] a causal connection between the injury and the conduct complained of; and (3) it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. An interest shared generally with the public at large in the proper application of the Constitution and laws will not do.

*Liberty Univ., Inc. v. Geithner*, 753 F. Supp. 2d 611, 621 (W.D. Va. 2010) (internal citations and quotations omitted). Standing ensures that an injured party pursues the litigation with vigor and that the available remedies can assist the plaintiff in some way.

The ripeness and standing doctrines raise substantial questions about the justiciability of the present case. In this context, the Court focuses on what has *not* yet happened to the plaintiff, and what she has *not* yet done. The plaintiff has not applied for a state court order allowing her to enter forbidden areas. Obtaining the state court order is a *sine qua non* of entry into schools and daycare centers. Until the Virginia circuit court allows entry, neither the Board nor the proprietor of a daycare can admit the plaintiff onto its property. The Court has no idea how the circuit court would rule on the plaintiff's hypothetical petition. Given the plaintiff's criminal history, which arose in a school setting, it is conceivable that the state court might deny her petition. A denial of the petition would render the Board's practices inconsequential. This alone demonstrates that the case is not ripe.

Other ripeness problems exist in the plaintiff's claim. She has not approached either the Board or churches with a daycare to ask for permission to enter their property. In fact, her counsel admitted in argument that she has not even asked, hypothetically, whether she can apply anonymously for permission to enter the premises. Thus, she does not know whether the Board or the churches would require her to disclose her identity, and, if disclosure is required, to whom it would be made. Whether she would suffer injury in the application process is purely conjectural.

This case fails to satisfy the requirements of the ripeness doctrine—her claim is dependent on future uncertainties. The future impact of the law on her is speculative, conjectural, and hypothetical. The harms she asserts may or may not happen. The case is simply not ripe for adjudication.

Nor does the plaintiff have standing. As noted above, she lacks an injury in fact at this time. The future impact of the law on her is hypothetical. Whether the Court can provide meaningful relief, and what such relief might be, depends on how the circuit court, Board, and local churches react to a request for permission to enter their property. It is possible that the plaintiff may have standing in the future, but it is also possible that she will not. As such, the plaintiff lacks standing under these circumstances.

One aspect of the plaintiff's complaint is, however, justiciable at this time. Her claim against Flaherty that she should not be listed on the sex offender registry involves concrete injury that presently exists. This claim satisfies both the ripeness and standing doctrines.

As noted above, the parties have not raised these issues, so the Court has addressed them without the benefit of briefing. In order to provide a full record for any appeal, the Court will also address the merits of the plaintiff's claims.

## B. Failure to State a Claim

### 1. Defendant J. Gilbert Seaux

In her Complaint, the plaintiff has sued J. Gilbert Seaux in his official capacity as chairman of the Board for "exercising the authority granted to the School Board under Virginia law" and violating a number of Plaintiff's constitutional rights. (Compl. ¶ 9.) When a local government figure is sued in his or her official capacity, however, it is considered to be an action against the municipality. *See Kentucky v. Graham*, 473 U.S. 159 (1985). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity received notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 165-66 (quoting *Monell v. NY City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

The Board has already been named as a defendant in the above-captioned matter, so the naming of Seaux in his official capacity is redundant and unnecessary. Plaintiff has agreed to the dismissal of Seaux as he is not a necessary or indispensible party within the meaning of Fed. R. Civ. P. 19, and he has not been sued in his personal capacity. The Court, therefore, dismisses all claims against defendant Seaux.[5]

### 2. Count I: Substantive Due Process

#### a. The Defendants' Conduct Does Not Shock the Conscience.

Substantive due process protects individuals from government action that is so arbitrary that no procedural protection can render it fair. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Substantive due process violations do not supplant state tort law, but rather reach

---

[5] All arguments hereafter will refer to the defendants Board and Flaherty only. Seaux joined in all arguments with the Board but has been dismissed as an unnecessary party. Flaherty's arguments are also asserted by the Department, an entity over which the Court lacks jurisdiction.

misconduct and harm that are so extreme, excessive, and egregious as to be of "constitutional magnitude." *Waybright v. Frederick Cnty.*, 528 F. 3d 199, 204-05 (4th Cir. 2008). The common rubric of a substantive due process violation is that it "shocks the conscience." *Id.* at 205. Nothing any of the defendants in this case have done shocks the conscience.

As alleged in the complaint, Flaherty has simply collected information about sex offenders and published it on the Registry. His conduct has implemented Virginia legislation initially requiring registration of sex offenders and later broadening the categories of who must register. Through the registration statute, as implemented by Flaherty, Virginia tries to identify people who pose a risk to her citizens. *See* Va. Code § 9.1-902. Nearly every state has such a statute. The Supreme Court has explained the rationale for such statutes in *Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1 (2003), where it found that registration laws warn citizens about sex offenders in their midst, protect against recidivism, and help in the arrest of repeat offenders. *Id.* at 4. While one might disagree with the policy behind registration statutes, the implementation of them does not shock the conscience, and, therefore, Flaherty has not violated substantive due process.

The plaintiff also appears to attack the enactment of the statute that requires sex offenders to get permission before entering schools or daycare sites. If protection of society in general is a valid reason to have registration laws, certainly a provision that provides special protection to children is *a fortiori* constitutional. There is nothing here that shocks the conscience.

Finally, the plaintiff urges that the Board should have an anonymous procedure in which she can obtain the Board's permission to enter school property without disclosing her identity. This argument is nonsense. The Board must know the identity of the applicant in order to make

informed decisions concerning entrants on school property and to ensure the safety of schoolchildren. The failure to have such a procedure does not shock the conscience.

### b. No Protected Interest is Implicated.

The plaintiff's substantive due process claim fails for another reason—not every right receives substantive due process protection. To state a viable claim for the violation of a substantive due process right, the claimant must nearly always describe and establish that the interest asserted is a fundamental right or liberty interest specially protected under the Due Process Clause. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). The right must be "deeply rooted in this Nation's history and tradition" or "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [it were] sacrificed.'" *Id.* (citations omitted). Legislation interfering with a fundamental right or liberty interest survives constitutional scrutiny only if it is narrowly tailored to serve a compelling state interest. *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)). If the asserted right is not a fundamental right or liberty interest specially protected by the Due Process Clause, the legislation will survive constitutional scrutiny if it is rationally related to a legitimate government interest. *Id.* at 728 (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)); *Flores*, 507 U.S. at 305; *McCabe v. Commonwealth*, 274 Va. 558 (2007); *Walton v. Commonwealth*, 255 Va. 422, 427-28 (1998).

The plaintiff has not clearly established that her asserted interest is a fundamental right protected by the Due Process Clause. The true gravamen of her Complaint is that she must reveal her identity—in the Registry and to the Board. An "individual has no right to privacy in [her] identity." *Jones v. Murray*, 763 F. Supp. 842, 848 (W.D. Va. 1991) (holding that it is constitutional "to develop a DNA data bank [to] . . . enable the state to detect and deter violent crimes"); *see also Cutshall v. Sundquist*, 193 F.3d 466, 480-81 (6th Cir. 1999) (holding that "the

Constitution does not encompass a general right to nondisclosure of private information," and that a sex offender registry act "does not impose any restrictions on [plaintiff's] personal rights that are fundamental or implicit in the concept of ordered liberty") *Id.* From the beginning of our republic, criminal trials and their convictions have been public. The plaintiff has never contested her 1993 conviction, only its consequences.

Since her anonymity is not a fundamental interest, the defendants need only prove a rational basis for their actions. As stated by the Board, "the laws protecting children and the general public from convicted sex offenders have been established for a reason." (Defs' Mem. in Supp. of Mot. to Dismiss 7.) "Sex offenders are a serious threat in this Nation," *Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003), and state legislatures have found that "sex offenders pose a high risk of reoffending and [have] identified 'protecting the public from sex offenders' as the 'primary governmental interest' of the law." *Smith v. Doe*, 538 U.S. 84, 93 (2003) (holding that the retroactive application of a sex offender registry does not violate the *Ex Post Facto* Clause).

The plaintiff tries to cloud the issue by arguing that the registration laws affect her fundamental right to direct the upbringing and education of her children. Among the rights protected in the substantive due process shelter of the Fourteenth Amendment is the right to "bring up children" as one sees fit. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The courts have long held, however, that "this fundamental right is not unbounded." *Myers v. Loudoun Cnty. Sch. Bd., et al.*, 251 F. Supp. 2d 1262, 1275 (E.D. Va. 2003). "Indeed, the state legitimately can impose restraints and requirements that touch the lives of children in direct conflict with the wishes of their parents." *Id.* (citing *Bellotti v. Baird*, 443 U.S. 622, 639 n.18

(1979) ("constitutional parental right" to direct upbringing of one's child protects only "against undue, adverse interference by the State")).

Here, the statute in question has only a tangential effect on the upbringing of the plaintiff's children. The children remain at home to receive their mother's care. No beliefs are imposed on them; no danger is visited upon them. It is not even clear whether the Board will permit her to go to her children's schools, perhaps without disclosing her convictions to people outside the central office of the school division. Moreover, the plaintiff has many ways to participate in her children's education—she can call teachers and administrators, she can monitor homework, she can meet school faculty off-site. Her inability to go into the school building is no different than that of an incarcerated parent, or a rural parent who has lost her driver's license.

Count I does not state a substantive due process claim against any of the defendants, and it will be dismissed.

### 3. Count II: Procedural Due Process

To satisfy the "elementary and fundamental requirement of due process," individuals are entitled to notice and an opportunity to be heard concerning any deprivation of life, liberty, or property. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In other words, the plaintiff's procedural due process right under the Fourteenth Amendment guarantees that the state will not deprive her of life, liberty, or property without engaging in some review of its decision to do so. *See Mathews v. Eldridge*, 424 U.S. 319, 322 (1976).

Here, the plaintiff says that Flaherty violated due process by placing her name on the Registry "without first affording her any procedure by which she could contest that reclassification." (Compl. ¶ 44.) Specifically, she demands a hearing to contest her reclassification "based on the facts of her offense and her specific characteristics, including that

16

she is not a dangerous individual." (*Id.* ¶ 13.) The Supreme Court definitively closed the door on this argument in *Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1 (2003). The plaintiff has no due process right to prove she is not dangerous because dangerousness is not the criterion that causes a person to be listed on the Registry. Rather, the fact of conviction leads to registration, and the plaintiff's desire to prove her innocuous nature does not address a relevant issue. Plaintiffs bringing a procedural due process challenge must allege the need for an additional procedural requirement which would produce relevant results under the applicable statutory scheme. *Id.* at 8 (rejecting challenge to Connecticut sex offender registry where plaintiff claimed a constitutional right to a hearing before placement on the state registry but could not show how any information from the hearing would be relevant to his registration). The plaintiff's conviction is the only relevant fact in registering her, and, before her conviction, she had the right to the highest form of due process, a trial by jury in which her guilt had to be proved beyond a reasonable doubt. There is no due process violation in placing her on the Registry.

As to the Board, the plaintiff argues that it has violated her due process right by not affording her an anonymous-petition procedure to enter school property. (Compl. ¶ 45.) As noted above, the plaintiff does not have a protected right in the privacy of her identity; therefore, her right to procedural due process has not been infringed. Further, the statute gives the plaintiff a procedural mechanism to secure entry to school property. She must first file a public petition in circuit court then ask the Board for permission to enter the property. In these proceedings, she would be able to demonstrate that she no longer poses a threat to schoolchildren.[6] Due process requires no more, and likely could be satisfied by a lesser procedure.

---

[6] While this argument would not get her off the registry, it might suffice to cause the circuit court to allow her on school and daycare grounds.

The claim to a right of anonymity is without merit. First, an anonymous proceeding before the Board would do her little good: her conviction is a matter of public record, her registration is a matter of public record, and her petition in circuit court (if she ever files one) will be a matter of public record. The cat is out of the bag as far as her prior conviction goes.

Moreover, the procedure suggested by the plaintiff, and refined by her counsel at oral argument, turns due process into a twisted and ineffective vehicle. First, she states that she should be able to file her petition in circuit court under a pseudonym. Next, the circuit court would have to communicate the results of her hearing to the Board in a secret code that does not reveal her identity. Then, the Board would consider her anonymous application for permission to enter its grounds; presumably, the plaintiff would sit behind a curtain while explaining her position to the Board so that her identity is not revealed. Finally, the Board would render a decision allowing an unknown sex-offender on school property. Her proposed procedure is designed not to lead to sound results, but rather to cause the Board to make a decision in the dark.

Without knowing the plaintiff's identity, the appropriate school officials could not monitor her activity on school grounds, and the identity of the children she wants to pick up or see on school grounds could not be obtained. The plaintiff's desire is impractical—she asks the Court to allow her, a sex offender, to matriculate anonymously among young children without the explicit knowledge of administrators, children, or the parents of those children. Such a result adversely affects the health and safety of those other children and parents.

Due process does not require such a procedure.

Count II is dismissed in its entirety.

### 4. Count III: Associational Rights under 1st and 14th Amendments

The plaintiff next asserts that all the defendants have violated her constitutional right to associate with parents, teachers, and other school employees. (Compl. ¶¶ 47-49.) "Determining the limits of state authority over an individual's freedom to enter into a particular association . . . unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984). "Factors that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." *Id.* Only those relationships that exhibit smallness, selectivity, and seclusion are "likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty." *Id.* Such a relationship is not present in this case.

The plaintiff's claim in Count III articulates a general right of association that is, undoubtedly, large and inclusive—it includes the entire school setting and the individuals therein. As stated by the Board, "the Spotsylvania County School Board is not relatively small, selective, or in any way exclusive such as to warrant any protections afforded under freedom of intimate association." (Defs' Reply Mem. in Supp. of Mot. to Dismiss 12-13.)

Moreover, schools often limit the rights of parents to associate with the universe of people at school. No parent can enter the classroom without permission. Disruptive parents are frequently barred from school property. People who lose their driver's licenses or are incarcerated generally cannot travel to schools. Parent-teacher conferences are often limited to certain pre-arranged dates and times.

Nothing alleged in this case violates the plaintiff's right to associate with others.

The Court will dismiss Count III as to all Defendants.

### 5. Count IV: Right to the Free Exercise of Religion

The Free Exercise Clause of the First Amendment, applicable to the States through the Fourteenth Amendment, *see Cantwell v. Conn.*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I; *see Church of the Lukumi Babalu Aye v. City of Hialeah, Inc.*, 508 U.S. 520, 532 (1993); *Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 170 (4th Cir. 1995). While the Free Exercise Clause prohibits the government from passing laws that stifle religious belief or practice, a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice. *Goodall*, 60 F.3d at 170; *see Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-79 (1990); *see also, Lukumi*, 508 U.S. at 531-32 ("[O]ur cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995) ("[A] neutral, generally applicable law does not offend the Free Exercise Clause, even if the law has an incidental effect on religious practice.").

In this case, the plaintiff's claim that her fundamental right to the free exercise of religion has been violated by Flaherty is meritless—Virginia's sex-offender registration laws are neutral, of general applicability, and only incidentally affect the plaintiff's ability to practice her religion. The registration laws are facially neutral since they lack any reference to religion or the incidents of religious practice, and the Virginia General Assembly enacted them for reasons totally unconnected to any religion-based discriminatory purpose. Moreover, the registration laws are applicable to all sex offenders without regard to age, sex, race, or religion—all sex offenders must follow the same initial registration requirements.

Finally, the instant case offers a prime example of the incidental effects of certain laws on religious practice. Because of her 1993 conviction, the plaintiff must ask for permission to enter certain properties that house young children. The registration law and its procedures happen to frustrate the plaintiff's ability to attend churches with adjoining daycares. Such collateral effects of her conviction are certainly incidental and not within the purpose of the registration laws. The General Assembly enacted such laws for the safety and well-being of Virginia citizens, and these laws are neutral and generally applicable.

Plaintiff has failed to provide sufficient facts to state a plausible claim for which relief may be granted.

Count IV will be dismissed in its entirety.

### III. CONCLUSION

For the reasons stated, the Court dismisses the entire complaint with prejudice.

It is SO ORDERED

Let the Clerk send a copy of this Order to all counsel of record.

/s/
John A. Gibney, Jr.
United States District Judge

Date: June 27, 2011
Richmond, VA